UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES RUSSELL S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-00391-TAB-JMS |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S REQUEST FOR REVIEW**

**I.      Introduction**

Plaintiff's appeal of the Commissioner's decision denying his claim for Social Security disability benefits sounds a familiar refrain: the Administrative Law Judge cherry picked evidence, failed to build a logical bridge to support her findings, and impermissibly played doctor. The Court disagrees. A fair reading of the ALJ's decision and the record reveals that the decision is supported by substantial evidence, and that at several important junctures Plaintiff failed to present sufficient evidence of his limitations or otherwise failed to show that he was more limited than the ALJ found. As a result, Plaintiff's request to review the Commissioner's final decision [Filing No. 16] is denied.

**II.     Background**

Plaintiff filed for benefits on September 17, 2019. His claim was denied initially and on reconsideration. On September 1, 2020, following a hearing, the ALJ denied Plaintiff's claim. [Filing No. 14-2.] The Appeals Council denied Plaintiff's request for review, and Plaintiff timely filed this appeal.

As set forth in the record and highlighted in the ALJ's decision, the ALJ found that Plaintiff reported symptoms of depression and anxiety, had been diagnosed with numerous non-severe impairments, and had the following severe impairments: right shoulder rotator cuff tear, status post surgical repair, degenerative disc disease of the lumbar spine with radiculopathy, chronic obstructive pulmonary disease (COPD), obesity, and a learning disorder. [Filing No. 14-2, at ECF p. 29.] At the time of Plaintiff's alleged onset date of June 30, 2019, he was 43 years old (making him a "younger individual" under the Social Security Act) and had past relevant work as an industrial truck operator.

In February 2020, a State Agency medical consultant concluded that Plaintiff could perform sedentary work despite severe dysfunction of a major joint. [Filing No. 14-3, at ECF p. 22-49.] A State Agency psychological consultant determined that Plaintiff's mental impairments were non-severe. [Filing No. 14-3, at ECF p. 28-29.] The ALJ found these opinions "somewhat persuasive" as generally consistent with the record as a whole. [Filing No. 14-2, at ECF p. 34.] Plaintiff testified before the ALJ as to his limitations, submitted a function report, and also submitted a third-party function report from his ex-sister-in-law.

Considering the record evidence, the ALJ assessed Plaintiff's Residual Functional Capacity as follows:

> I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: occasionally balance, stoop, kneel, crouch, and crawl; occasional foot controls bilaterally; occasional slippery uneven surfaces; normal seizure precautions, including but not limited to no unprotected heights, no ladders, ropes, or scaffolding, no exposure to unmanned, moving, dangerous machinery, and no commercial driving; no more than occasional exposure to concentrated airborne irritants, including but not limited to fumes, odors, dusts, and gases; he has the mental capacity to understand, remember, and follow simple instructions; within these parameters and in the context of performing routine tasks, he is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence.

[Filing No. 14-2, at ECF p. 31-32.]

The ALJ found Plaintiff could not do his past relevant work. However, considering Plaintiff's RFC and vocational profile, and relying on the testimony of a vocational expert, the ALJ found Plaintiff could do jobs such as sorter, inspector, and circuit board assembler, each of which existed in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff was not disabled. [Filing No. 14-2, at ECF p. 35-36.]

### III. Discussion

As noted, Plaintiff generally contends that the ALJ cherry picked evidence, failed to build a logical bridge to support her findings, and impermissibly played doctor. Specifically, Plaintiff argues that the ALJ's decision highlights normal findings or evidence of normal functioning and overlooks objective abnormalities or difficulties in functioning, *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982), and that as a result the ALJ's reasoning cannot be traced from the evidence to the conclusion in an accurate and logical bridge. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015). The Court addresses these overreaching arguments, as well as a few other specific claims of error, below.

Plaintiff's argument begins with the assertion that the State Agency consultants' opinions that formed a basis for the ALJ's RFC were "outdated and unsupported." [Filing No. 16, at ECF p. 11.] Plaintiff contends that these opinions are incomplete because they did not consider Listings 1.04 and 12.11.[1] To succeed on this argument, Plaintiff must show that later-submitted evidence "would have changed [the] physicians' opinions." *Keys v. Berryhill*, 679 F. App'x 477, 480–81 (7th Cir. 2017). Plaintiff's argument has several flaws. First, "agency regulations do not

---

[1] The State Agency consultants considered Listing 12.04, which has the same paragraph B criteria as Listing 12.11, which the ALJ considered.

prevent the ALJ from according great weight to a doctor who has considered only some of the claimant's conditions[.]" *Id*. at 481.  Second, Plaintiff fails to demonstrate that he satisfied these listings.  Plaintiff cites to evidence relating to Listing 1.04 but fails to correlate this evidence with any of the listing's requirements, such as nerve root compression, nerve root compromise, and positive straight leg raises in the sitting and supine positions.  Third, Plaintiff does not dispute that the ALJ considered whether Plaintiff met or equaled Listings 1.04 and 12.11.

Plaintiff next asserts that the State Agency consultants did not consider certain objective tests comprised of a lumbar x-ray, an MRI, and a CT scan.  However, the September 13, 2016, lumbar x-ray and the March 2017 MRI Plaintiff references are part of Exhibit B2F comprising records from Indiana Health Information Exchange.  [Filing No. 14-7, at ECF p. 99-100, 145-46.]  This evidence was available to the State Agency consultants and included on the Disability Determination Explanation form as part of the "Evidence of Record."  [Filing No. 14-3, at ECF p. 39.]  And the September 2018 CT scans Plaintiff references are records from Schneck Medical Center, and were similarly available to the State Agency consultants.  [Filing No. 14-3, at 38-39; Filing No. 14-7, at ECF p. 72-73.]  Plaintiff challenges this as a "myopic reliance" on an itemized list that constitutes error.  [Filing No. 20, at ECF p. 6.]  Plaintiff's concerns are not wholly off the mark.  Nonetheless, simply because the consultants did not expressly reference this evidence does not mean it was not considered.  *Cf. McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("[A]n ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence") (internal quotation marks and citation omitted).  Moreover, Plaintiff provides no authority for the proposition that a non-examining consultant must list all evidence reviewed.

4

With respect to the State Agency findings being "outdated," Plaintiff references a February 12, 2020, emergency room visit following a fall down some stairs. However, Plaintiff's complaints only of lower back pain after the fall are consistent with the nature of the pain complaints the State Agency considered. [Filing No. 14-8, at ECF p. 314 *with* Filing No. 14-3, at ECF p. 40-41.] Physical examination at the hospital revealed only tenderness over the right buttocks and spinal stimulator pocket, so this additional evidence does not compel the conclusion that the State Agency findings were outdated. Plaintiff also points to notes reflecting Plaintiff used a cane in March and June of 2020 and had an irregular gait. However, this falls short because "his self-reports [or] physicians' observations that he presented with an assistive device" are insufficient to establish medical necessity of an assistive device. *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). Likewise, evidence concerning Plaintiff's limited range of spine and shoulder motion is cumulative of evidence the State Agency consultants considered and does not compel any specific functional restrictions. [Filing No. 14-3, at ECF p. 41.]

Plaintiff's purportedly new diagnosis of peripheral neuropathy is similarly unavailing. Plaintiff bears the burden of showing the impairment affected his ability to work or was not adequately accounted for by the RFC the ALJ assessed. He has failed to do so. Plaintiff cites to *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014), for the proposition that the ALJ erred in accepting uncritically the State Agency consultants' opinions where they did not review an MRI showing a worsening of the claimant's conditions. Yet missing from Plaintiff's analysis is any exploration of how the evidence on which he relies was not cumulative of evidence the consultants considered or otherwise significant to reasonably change their assessments. Plaintiff certainly makes no showing why this evidence would compel a favorable step three or RFC finding.

Plaintiff's contention that the ALJ played doctor fares no better. As Plaintiff sees it, because the State Agency opinions were outdated, and because there were no other medical opinions on which to rely, the ALJ erred in determining the significance of the medical findings herself at step three and in crafting the RFC. [Filing No. 16, at ECF p. 12-13.] The Court disagrees. The fact that the consultants did not expressly consider each listing the ALJ considered does not deprive their findings of value. The consultants' "assessment of the Plaintiff's RFC and completion of the disability transmittal forms creates a presumption that they considered the listings based on the evidence of record that they reviewed." *Tracy R. v. Berryhill*, No. 2:17-cv-465-WTL-MJD, 2018 WL 4443002, at *5 (S.D. Ind. Sept. 18, 2018). The ALJ found the State Agency findings generally consistent with the overall record, and Plaintiff makes no showing how the evidence on which he relies demonstrates he can meet or equal a listing. [Filing No. 14-2, at ECF p. 34.] As a result, Plaintiff has not met his burden of showing remand is appropriate.

The Court next turns to Plaintiff's claim that the ALJ failed to build the proverbial bridge to support his findings. In support of this argument, Plaintiff claims that the RFC falters because it purportedly did not provide a function-by-function assessment of his abilities. [Filing No. 16, at ECF p. 14-15.] Once again, the Court disagrees. As stated in *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009), "Although the 'RFC assessment is a function-by-function assessment,' SSR 96–8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient[.]"

Here, the ALJ analyzed the objective medical and other medical evidence of record. For example, the ALJ noted that some limitation persisted after successful surgery to repair a torn rotator cuff but observed that physical therapy improved Plaintiff's functioning, and his

orthopedic surgeon anticipated a full recovery. [Filing No 14-2, at EC p. 32-33.] Significantly, Plaintiff's orthopedist did not place any restrictions on his function beyond that accounted for in the RFC.

      The ALJ also discussed Plaintiff's back impairment, and spinal cord stimulator, which greatly improved his lower back pain. [Filing No. 14-2, at ECF p. 33.] The ALJ also considered Plaintiff's purported need for a walker for stabilization, but cited evidence that Plaintiff's gait was observed as normal and stable, and treatment notes sparsely mentioned Plaintiff's gait. [Filing No. 14-2, at ECF p. 33.] Moreover, as previously noted, the ALJ also considered Plaintiff's falls. However, there is no evidence that either fall resulted from gait or balance abnormalities. As for Plaintiff's COPD and obesity, the ALJ noted the record did not reflect COPD exacerbations or specific obesity treatment, such as referral to a dietician or a bariatric surgeon. [Filing No. 14-2, at ECF p. 33.] Moreover, the ALJ also considered Plaintiff's subjective statements and other evidence, but found Plaintiff's subjective complaints were out of proportion to the objective medical evidence, prior administrative medical findings, and Plaintiff's treatment and response to treatment. [Filing No. 142, at ECF p 31.]

      Continuing with the "logical bridge" theme of attack, Plaintiff claims the evidence does not support the RFC's limitation to occasional balancing, stooping kneeling, crouching, crawling, and exposure to slippery surfaces. [Filing No. 16, at ECF p. 17.] However, the RFC was slightly more limiting than the consultants' findings, since the latter did not include the environmental limitation to only occasional exposure to slippery surfaces. In any event, it makes no difference: none of the jobs provided by the vocational expert and relied on by the ALJ at step five requires any amount of climbing, balancing, stooping, kneeling, crouching, crawling, or

exposure to wetness or atmospheric conditions.[2] As a result, the limitation is vocationally irrelevant to this case.

Plaintiff next asserts that the ALJ erred in rejecting a "well supported" cane restriction. [Filing No. 16, at ECF p.17.] On this point, the Commissioner fires back that Plaintiff's need to use a cane is far from "well-supported." Filing No. 18, at ECF p. 18.] The Court agrees with the Commissioner. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Consistent with that finding, neither Plaintiff's (nor his ex-sister-in-law's) self-reported need for an assistive device, nor even medical documentation that he presented with a cane, are sufficient to carry his burden to supply medical documentation of the need for a cane. *Tripp*, 489 F. App'x at 955. Though Plaintiff wrote he was "prescribed" a cane, [Filing No. 14-6, at ECF p. 8], he failed to supply that prescription, and then did not carry his burden under SSR 96-9p and cases like *Tripp*.

Even if Plaintiff had supplied a prescription, the ALJ cited substantial evidence to reject Plaintiff's purported need to use a cane. The ALJ found Plaintiff's gait was frequently described as normal and stable. Although Plaintiff reported two falls, as previously noted, nothing suggests these falls were the result of balance issues. Moreover, medical records after these falls did not mention gait deficits. [Filing No. 14-8, at ECF p. 315.] The record reveals Plaintiff presented to his doctors complaining of physical impairments (many back or joint related), his providers performed physical examinations, and those examinations revealed no gait or

---

[2] As argued by the Commissioner, this conclusion is supported by the Dictionary of Occupational Titles. [Filing No. 18, at ECF p. 17.]

ambulation irregularities. Plaintiff is correct that some of these exams were the result of appointments unrelated to consultations associated with difficulty walking. But the fact is the ALJ fairly considered the entire record, including those instances where Plaintiff was noted to use a cane, and determined a cane was not necessary. Nothing in this regard supports remand.

A slightly more interesting argument is Plaintiff's contention that there is no logical bridge to the ALJ's rejection of a reaching limitation in the RFC. [Filing No. 16, at ECF p. 19.] Plaintiff notes that the ALJ did not explain how she concluded that a limitation on lifting and a "hopeful" prognosis show that no reaching restriction was necessary. The problem with this argument, however, is that it was Plaintiff's burden to provide evidence sufficient to prove the necessity of a reaching limitation, and Plaintiff has failed to do so. The only medical sources to suggest the need for a reaching limitation were the State Agency consultants. They found Plaintiff could frequently reach in front of him and laterally. [Filing No. 12-3, at ECF p. 31.] That limitation is not vocationally relevant, because none of the jobs relied on by the ALJ at step five require more than frequent reaching.

Turning to Plaintiff's "hopeful prognosis," it is notable that the State Agency consultants also limited Plaintiff to occasional overhead reaching with his right arm. [Filing No. 12-3, at ECF p. 31.] The ALJ declined to adopt this limitation, noting that by May 2020 Plaintiff had only "slightly limited abduction." [Filing No. 14-9, at ECF p. 4.] At that time, Plaintiff's treating orthopedist "anticipated gradual improvement to completion" and did not impose any specific functional restrictions. [Id.] Five months earlier, in January 2020, Plaintiff achieved 171 degrees of passive right shoulder abduction, within the expected 170-180-degree range. As a

9

result, Plaintiff's skepticism notwithstanding, the ALJ's explanation for excluded reaching restrictions is supported by substantial evidence.[3]

Plaintiff next raises concerns regarding the ALJ's treatment of his mental impairments. Plaintiff suffers from anxiety and depression for which he has been prescribed medications. Plaintiff claims the ALJ improperly concluded his diagnoses were based on subjective statements alone. [Filing No. 16, at ECF p. 20.] A review of the ALJ's decision reveals that the ALJ found Plaintiff's depression was not a medically determined impairment. [Filing No. 14-2, at ECF p. 29.] Thus, the ALJ was not required to account for any alleged symptoms resulting from impairments that were not medically determinable. *See* SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment[s]."). As the ALJ found, Plaintiff's depression diagnosis (rendered by a nurse practitioner) was based on his subjective reporting alone. A mental status examination at the same appointment revealed his mood and affect were normal. [Filing No, 14.7, at ECF p. 184-85.] A medically determinable mental impairment can be established only by "psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

Plaintiff's statement of symptoms or a diagnosis are insufficient to meet this burden. Although Plaintiff claims that his treatment notes "showed depression" [Filing No. 16, at ECF p. 20], he fails to point to any psychological abnormalities as set out in the regulations. Instead, he relies entirely on his subjective report of symptoms. While a plaintiff's subjective reporting may

---

[3] Again, Plaintiff's argument here flips the burden. Plaintiff must adduce evidence of limitation. Plaintiff's argument that frequent reaching likely exceeds his capability falls short, particularly given that the ALJ discounted Plaintiff's self-professed limitations. [Filing No. 14-2, at ECF p. 32.]

10

factor into a "psychological assessment," *Aurand v. Colvin,* 654 F. App'x 831, 837 (7th Cir. 2016), here the psychological assessment was entirely normal, notwithstanding Plaintiff's subjective reporting. As noted above, an ALJ is not required to consider impairments that are not medically determinable, yet the ALJ observed that even if Plaintiff's depression was a medically determinable impairment, it was not a severe impairment and it caused no more than minimal functional limitations. [Filing No. 14-2, at ECF p. 29.] Accordingly, Plaintiff failed to sustain his burden to demonstrate any error in the ALJ's consideration of depression.

The Court now turns to Plaintiff's arguments focusing on his learning impairment disorder. The ALJ found this impairment to be severe. Nevertheless, the ALJ found Plaintiff had only moderate limitations understanding, remembering, or applying information and no limitations concentrating, persisting, or maintaining pace. The ALJ included in Plaintiff's RFC limitations that she explained accounted for Plaintiff's learning disorder, including that he could understand, remember, and follow simple instructions, perform routine tasks, and sustain attention and concentration sufficient to carry out work-like tasks with reasonable pace and persistence. [Filing No. 14-2, at ECF p. 31-32, 34.]

Plaintiff does not cite to any objective evidence or medical evidence requiring a more limiting mental RFC. Instead, Plaintiff's subjective limitations, which the ALJ considered but discounted, cannot carry the day. Plaintiff's allegations concerning his reading ability, writing ability, activity level, memory and off-tasks behavior are likewise the product of his subjective complaints. So once again Plaintiff has flipped the evidentiary burden upside-down by failing to provide credible evidence that compels greater functional limitations in the RFC. *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018); *Pepper v. Colvin*, 712 F.3d 350, 367 (7th Cir 2013). Moreover, the ALJ found Plaintiff had no limitations concentrating, persisting, or

11

maintaining pace. [Filing No. 14-2, at ECF p. 31.] This forecloses Plaintiff's related argument that the ALJ did not consider limitations in persistence. [Filing No. 16, at ECF p. 22.] The authority Plaintiff cites predates or is inconsistent with more recent Seventh Circuit case law acknowledging that:

> A 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.' 20 C.F.R. Pt. 404, Subpt. P, App. 1. . . . '[F]air' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

*Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).

The Court also rejects Plaintiff's contention that the ALJ failed to account for his self-professed off task or off work limitations. As previously discussed, the ALJ discounted Plaintiff's subjective statements, and was not required to adopt limitations she found were inconsistent with the evidence. *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) ("The ALJ need[] only to include limitations in his RFC determination . . . that the ALJ found to be credible."). Nor was the ALJ required to incorporate stress-based limitations into the RFC, given that Plaintiff cites no evidence of record that he manifested any stress-related limitations. As the Commissioner aptly puts it, Plaintiff's challenge is based on the RFC he wants, not the RFC the ALJ supportably assessed. [Filing No. 18, at ECF p. 25.]

Plaintiff has the burden to prove the need for functional limitations resulting from his impairments. *See Schmidt v. Barnhart*, 395 F.3d 737, 745–46 (7th Cir. 2005) (holding the assertion that a diagnosis meant the claimant experienced limiting or disabling symptoms is an unfounded leap in logic). The ALJ expressly found that Plaintiff has a "limited education," [Filing No. 14-2 at EFC p. 34], which the regulations define as having "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational

qualifications to do most of the more complex job duties needed in semiskilled or skilled jobs," 20 C.F.R. § 404.1565(b)(3). Plaintiff has not challenged this finding. Plaintiff's limited education is therefore consistent with the unskilled jobs relied on by the ALJ at step five, so the ALJ committed no error in this regard. [4]

Plaintiff next argues that the ALJ's decision does not support her analysis of Plaintiff's subjective complaints, but the Court disagrees. Contrary to Plaintiff's assertion, the ALJ did not consider only the objective medical evidence to discount Plaintiff's subjective symptoms. The Commissioner readily acknowledges that this was one factor in the ALJ's analysis. [Filing No. 18, at ECF p. 27.] The ALJ found the objective evidence, such as increased shoulder range of motion, normal gait, and normal mental status findings, all cut against Plaintiff's subjective complaints. However, the ALJ also discussed the location, duration, frequency and precipitating and aggravating factors of Plaintiff's symptoms. [Filing No. 14-2. at ECF p. 32.] The ALJ further considered that Plaintiff received some benefit from treatments, including surgery and a spinal cord stimulator, and discussed the prior administrative medical findings, which were less limiting that Plaintiff's subjective complaints. [Filing No. 14-2, at ECF p. 34.] An ALJ's discussion need not contain a complete written evaluation of every piece of evidence. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). This is particularly the case here, where the ALJ

---

[4] Although Plaintiff claims to have a third grade reading level, this contention is based only on Plaintiff's subjective testimony that his reading level was last tested "a long time ago" when he was in eleventh grade. The ALJ considered that Plaintiff testified he was in classes for a "learning disability," that he received help with reading and writing, that he alleged he could not read a newspaper, and that he could "probably not" write a letter to his girlfriend. [Filing No, 14-2 at ECF p. 31.] Nevertheless, the ALJ found Plaintiff had only moderate limitations understanding, remembering, and applying information, which means his "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c). Plaintiff does not directly challenge that finding.

expressly cited Plaintiff's function report in the decision, thus reflecting she considered it. [Filing No. 14-2, at ECF p. 31.]

Finally, the Court finds no prejudicial error from the ALJ not expressly discussing the third-party function report. The ALJ cited this report, demonstrating she was aware of it and considered it. [Filing No. 14-2, at ECF p. 31.] Evidence from non-medical sources, such as this, need only be expressly discussed "when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2). Plaintiff's reliance on *Brinley v. Berryhill*, 732 F. App'x 461 (7th Cir. 2018), is unavailing because, as the Commissioner points out, the Court's commentary concerning the third-party function report was dicta, and the Court noted "we are not prepared to say that the ALJ actually violated" SSA rules by not considering the third-party function report. *Id.* at 466. [Filing No. 18, at ECF p. 29.] Moreover, the enduring question here is whether the ALJ's decision is supported by substantial evidence, not whether there is also some evidence to support Plaintiff's claims. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002).

As a result, substantial evidence supports the ALJ's finding that Plaintiff could do jobs such as sorter, inspector, and circuit board assembler. Plaintiff raises one final argument: the Commissioner failed to show there are a significant number of jobs in the national economy that Plaintiff could perform. However, the vocational expert testified that there were 10,000 sorter jobs, 37,0000 inspector jobs, and 13,000 circuit board assembler jobs in the national economy. The Court finds that these job numbers fit within the range the Seventh Circuit has found satisfy "significant" numbers in the national economy. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("As few as 174 jobs has been held to be significant.") (citations omitted). *See also Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (finding 1,400 jobs significant).

## IV. Conclusion

The ALJ's findings were supported by substantial evidence. Accordingly, the ALJ's denial of disability benefits is affirmed. Plaintiff's request for remand [Filing No. 16] is denied.

Date: 5/4/2022

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email